FILED

2020 Oct-16  PM 03:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| WILLIAM SCOTT HAMNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 7:19-cv-00644-JHE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION[1]

Plaintiff William Scott Hamner ("Hamner") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability and disability insurance benefits ("DIB").  (Doc. 1).  Hamner timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record, and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

On September 18, 2013, Hamner protectively filed an application for a period of disability and DIB.  (Tr. 277-83).  After the agency denied his application (tr. 120-36, 165-69), Hamner requested and appeared at a hearing before an Administrative Law Judge ("ALJ") in April 2015.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.

(Tr. 46-85, 170-71).[2]  The ALJ issued an unfavorable decision on July 2, 2015, finding Hamner

not disabled.  (Tr. 140-52).  The Appeals Council subsequently granted Hamner's request for

review, vacated the hearing decision, and remanded the case for further consideration.  (Tr. 157-

62).  On remand, the case was assigned to a different ALJ, who held a hearing on July 24, 2017,

and who issued an unfavorable decision on June 14, 2018.  (Tr. 17-39).  Although Hamner

requested review of the ALJ's decision, the Appeals Council denied his request on April 19, 2019.

(Tr. 1-3).  On that date, the ALJ's decision became the final decision of the Commissioner.  On

April 29, 2019, Hamner initiated this action.  (*See* doc. 1).

Hamner was forty-five-years-old when he allegedly became disabled on September 18,

2013,[3] and forty-eight-years-old when his insured status expired on December 31, 2015.  (Tr. 91,

277, 301).  Hamner completed high school through special education classes, received vocational

training in small engine repair from Shelton State Community College, and has past relevant work

experience as a welder helper, vending machine servicer, and building maintenance laborer.  (Tr.

92-93, 110-11, 334, 342-49).  In his Disability Report, Hamner alleges he is unable to work

because of back and knee problems, mental problems, foot problems, and arthritis.  (Tr. 333).

## II. Standard of Review[4]

The court's review of the Commissioner's decision is narrowly circumscribed. The

---

[2] The administrative hearings are mislabeled in the Court Transcript Index.  The transcript of the April 2015 hearing is at the tab for the July 2017 hearing, and vice versa.

[3] In his application, Hamner alleged that he became disabled on December 1, 2010 (tr. 277); however, at the April 2015 hearing, he amended his onset date to September 18, 2013 (tr. 52-53).

[4]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI").  However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[5] The Regulations define "disabled" as "the inability to do any substantial

---

[5]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability

benefits, a claimant must provide evidence of a "physical or mental impairment" which "must

result from anatomical, physiological, or psychological abnormalities which can be shown by

medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is

disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed
        by the [Commissioner];
(4)     whether the claimant can perform his or her past work; and
(5)     whether the claimant is capable of performing any work in the national
        economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R.

section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999);

*accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied

steps One and Two, she will automatically be found disabled if she suffers from a listed

impairment. If the claimant does not have a listed impairment but cannot perform her work, the

burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*,

998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner

must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation

process, the ALJ made the following findings:

At Step One, the ALJ found Hamner last met the insured status requirements of the Social Security Act on December 31, 2015 (his date last insured or "DLI"), and that Hamner had not engage in substantial gainful activity from his amended alleged onset date of September 18, 2013 through his DLI. (Tr. 20).  At Step Two, the ALJ found Hamner has the following severe impairments: impaired intellectual functioning, but not an intellectual disorder; possible autism spectrum disorder; degenerative joint disease; disorder of the spine; and thyroid disorder.  (Tr. 21-26).  The ALJ also found that, through his DLI, Hamner has the following non-severe impairment: history of depressive disorder.  (Tr. 26).  At Step Three, the ALJ found Hamner did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26-31).

Before proceeding to Step Four, the ALJ determined Hamner's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1).  The ALJ determined that, through his DLI, Hamner had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a), except for the following additional restrictions: he can occasionally climb ramps and stairs, but never ropes, ladders or scaffolds.  He can frequently balance and stoop, occasionally kneel and never crouch or crawl.  He can constantly reach, handle, finger, and feel. He can understand, remember and carry out simple work instructions, but not instructions that are more detailed or complex.  He can occasionally interact with the public and frequently interact with co-workers and supervisors.  He can maintain attention and concentration sufficient to perform work at this level for at least two hours at one time with normal breaks throughout an eight-hour day.  (Tr. 31-36).

At Step Four, the ALJ determined, through the date last insured, Hamner was unable to perform any past relevant work.  (Tr. 36-37).  At Step Five, the ALJ determined, based on

Hamner's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Hamner could perform. (Tr. 37-38).  Therefore, the ALJ determined Hamner has not been under a disability and denied Hamner's claim.  (Tr. 38).

### V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Hamner failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion.  Specifically, Hamner challenges the ALJ's conclusion that his intellectual impairments did not satisfy the requirements of Listing 12.05(B) as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, is not supported by substantial evidence and based on improper legal standards.  (Doc. 10 at 6-8).

A.  **Whether Hamner's Intellectual Impairments Met or Medically Equaled § 12.05(B) of the Listing of Impairments**

To meet a listing, a claimant must have a diagnosis included in the Listings and provide medical reports documenting that his or her condition meets the specified criteria of a listed impairment and the duration requirement.  *See* 20 C.R.F. § 404.1512(a)-(d); *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).  "An impairment that meets only some of the Listing requirements, no matter how severe, does not qualify." *Prince v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 967, 969 (11th Cir. 2014); *see*  20 C.F.R. §404.1525(c)(3).

The Commissioner published final rules revising section 12.00 of the Listings on September 26, 2016. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,138 (Sept. 26, 2016). These rules became effective on January 17, 2017, and apply "to claims that [were] pending on or after the effective date." *Id.* Hamner challenges the ALJ's application of § 12.05(B), which states as follows:

B. Satisfied by 1, 2, and 3 (see 12.00H)

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

b. A full scale (or comparable IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation in one, or marked limitation of two, of the following areas of mental functioning:

a. Understand, remember, or apply information (see 12.00E1); or
b. Interact with others (see 12.00E2); or
c. Concentrate, persist, or maintain pace (see 12.00E3); or
d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. pt. 404, subpt. P, app. 1, §12.05(B). Thus, to satisfy the requirements of § 12.05(B), subsections (1), (2), and (3) must be met.

In determining whether Hamner's impairments met or medically equaled Listing 12.05(B), the ALJ recognized that Hamner obtained a full-scale IQ score of 67 on an intelligence test Dr. John R. Goff performed in April 2014, satisfying prong (1). (Tr. 30, 600). Having reviewed

Hamner's school records, the ALJ also found Hamner satisfied prong (3), stating Hamner "clearly has intellectual deficits that began prior to age 22." (Tr. 30). However, the ALJ found that Hamner did not have significant deficits in adaptive functioning currently manifested by extreme limitations of one, or marked limitations of two, of the four broad areas of mental functioning that are required to satisfy prong (2). (Tr. 28, 30). Hamner challenges this conclusion. (Doc. 10 at 7-8).

Hamner points to Dr. Goff's April 16, 2014 Medical Source Statement ("MSS"), which stated Hamner had "marked" impairments in his ability to interact appropriately with the general public; to interact appropriately with co-workers or peers; constriction of interests; the ability to understand, remember and carry out repetitive tasks; the ability to sustain a routine without special supervision; the ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to respond appropriately to supervision; ability to respond appropriately to changes in the work setting; and in the ability to respond to customary work pressures. (Doc. 10 at 7) (citing tr. 602-04). Dr. Goff also found "extreme" limitations in Hamner's ability to understand, remember, and carry out complex instructions; his ability to maintain attention and concentration for extended periods; and in his ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances. (Tr. 602-04).

Hamner recognizes that, to refute Dr. Goff's findings, the ALJ accorded only partial weight to Dr. Goff's opinions and, instead, relies on findings set forth in consultative examiner Dr. Silvia Colon-Lindsey's report. (Doc. 10 at 8). Hamner contends this was an error because Dr. Colon-Lindsey examined Hamner only once and as a psychiatrist. (*Id.*). Therefore, Hamner contends,

Dr. Colon-Lindsey's views are limited to the mental impairment of depression and do not have anything to do with Hamner's alleged intellectual disability. (*Id.*). Specifically, Hamner asserts Dr. Colon-Lindsey did not conduct any intelligence testing and did not review any of Dr. Goff's testing. (*Id.*). Instead, Dr. Colon-Lindsey indicated she only reviewed primary care clinical notes from July 2013, Indian Rivers Mental Health Center clinic summary from September 2013, and an Adult Function Report in making her findings. (*Id.*) (citing tr. 562-67).

Having reviewed the ALJ's decision and the record evidence, the ALJ properly determined that Hamner did not satisfy the requirements of Listing 12.05(B), specifically prong (2). The ALJ properly discounted Dr. Goff's opinions, expressly according them only "partial weight." (Tr. 30). The opinions of consultative examiners, such as Dr. Goff, are not entitled to any special deference or consideration, and the regulations do not impose the same articulation burden on ALJs in evaluating the opinions of non-treating doctors. *See* 20 C.F.R. §§ 404.1502, 404.1527(c)(2). Notably, in discounting Dr. Goff's opinions, the ALJ expressly found that they were based on "faulty information. (Tr. 30). Contrary to Dr. Goff's assertion that Hamner had a sparse or poor work history (tr. 599, 648), the ALJ noted that Hamner had worked for four years as a vending machine servicer and for six years in the maintenance department for the University of Alabama, and owned and maintained rental property. (Tr. 30, 93-94, 334, 342-49). The ALJ found Hamner's work at a semi-skilled level was inconsistent with Dr. Goff's opinion. (Tr. 31, 81). The ALJ also pointed out that Hamner had worked without accommodations, lived alone, and was responsible for managing his household and finances. (Tr. 30, 351-54). Hamner reported he left his job because of physical problems, not an inability to work from a mental perspective. (Tr. 30). The ALJ also noted that Dr. Goff was unaware of Hamner's rental enterprise, which he uses to support himself. (*Id.*).

The ALJ accorded "great weight" to the Dr. Colon-Lindsey's opinions, finding her November 2013 consultative evaluation "consistent with and supported by the weight of the evidence." (Tr. 35, 562-65).  Dr. Colon-Lindsey noted that Hamner engaged in a wide array of activities of daily living, including performing household chores, doing his own laundry, helping his father clean up rental properties, going to the grocery store, and visiting with family.  (Tr. 563). Although Hamner appeared immature, Dr. Colon-Lindsey observed he was alert and oriented; his immediate, recent, and past memory were good; and his fund of knowledge and information was good for current events.  (Tr. 564).  Dr. Colon-Lindsey further opined that Hamner was able to manage his own funds.  (Tr. 565).

For these reasons, the ALJ properly determined that Hamner failed to satisfy the requirements of Listing 12.05(B), specifically prong (2).  The ALJ did not improperly substitute her judgment for that of Dr. Goff, and the ALJ's reliance on Dr. Colon-Lindsey's report was based on the proper legal standards and is supported by substantial evidence.

## VI. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, decision of the Commissioner of Social Security denying Hamner's claim for a period of disability and disability insurance benefits is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**  A separate order will be entered.

DONE this 16th day of October, 2020.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE